Peck, Judge,
delivered the opinion of the court. In this cause the decree of the court below was affirmed in this court. A motion is now made to allow 124 per cent, from the time of the rendition of the decree below, and the question is, whether it ought to be allowed.
The act of 1794, ch. 1, sec. 64, giving 124 per cent, upon affirmance, was the law of the land when the constitution of this state was framed; hence it has not been deemed a violation of that instrument to render judgment on motion under the act in all cases, where the case is brought within it. Subsequent acts giving a like remedy, are with more plausibility subject to objection, as conflicting with the right of trial by jury; still, such laws have bean enforced where we can bring the case within the letter.
The act of 1817, ch. 119, sec. 2, is said to extend to proceedings in equity as well as at law, and that we are compelled to give the 124 per centum on affirming the final decree in the case before us. The language of the act is, that in cases brought up by certiorari or appeal, where the same shall be dismissed for the want of prosecution or for other cause, it thall be the duly of the court dismissing the same, to enter judgment against the principal and his security for the amount of the judgment below, with 124 per cent, interest from the date of such judgment.
It is enough for us to say, that this act does not apply to the case before us, because we do not dismiss; we act finally upon the case, and affirm the decree of the lower court. The causes therefore, which must exist to authorize the judgment under the act cited, not being found in the case, the act cannot be made to operate.
It is also argued, that the rules made in 1822, (Peck’s *496 Rep. 28, 29,) requiring bond to be given to prosecute the appeaj e|fect, or in case of failure to pay the money, and satisfy damages and costs, apply. These rules do not coverthe case; they authorize the bond,but thatbond when given, will not authorize a summary judgment, and of itself will not give 12á per cent, damages; neither the act authorizing the making the rules, or the rules themselves, provide for any such judgment.
The next act to which our attention is called, is the act of 1823, ch. 54, sec. 3. The first member of this section, speaking of writs of error, and the affirmance of judg; ments, cannot be taken as applying to proceedings in chancery. It would be violating language applicable to the proceedings in courts of chancery, inasmuch as it makes the term judgment synonymous with decree. It has been the policy of the courts to keep the terms distinct, and we must infer, that the legislature not only knew what was the proper term to use, but that she used it in accordance with the understanding of the courts.
But the latter member of the/sectiou, it is said, covers the case; the words are, “and in all appeals hereafter taken from an inferior to a superior jurisdiction, when the judgment shall be affirmed, the plaintiff shall recover in addition to the judgment in the court below, at the rate of 12& per cent, interest,” &c. Upon the language of the act above cited,, the saíne objection lies that has already been made to the first part of the section.
Indeed, the tenor of the whole act cannot be misunderstood, as we believe. The first and second sections relate alone to proceedings at law; this is obvious from the letter and spirit of the act. If it were possible to pass by the letter in the subsequent part of the act, we would be driven to intendment, to fix upon it the construction con. tended for in the case before us. We will not give judgment for the penalty demanded of 12í per cent, in any case, unless the provision is clear and positive. The act of 1819, ch. 31, sec. 2, is the act giving the appeal in chancery, and it is untouched by the subsequent act of 1823, ch. 54; there is matter for each act to operate upon, *497 and we have uniformly followed the act of 1819, in fram- . i mg our decrees “upon the whole matter of law and fact, as if the cause had commenced before us.” This is the language of the act; and how is it possible, that we, under this act could decree the 12¿ per cent, in a case brought before us by appeal, when it is clear we could not give it in cases where the cause had originated in our court? The very language of the act contains the negative of such a proposition.
Craighead, for complainant.
Washington and Cobbs, for defendant.
Keeping apart the cases at law, and those in equity, letting each court follow the rules appertaining to its ■jurisdiction, and all will be consistent. Equity'being an extraordinary jurisdiction, a case where the rules of law are insufficient, must be made out before equity can take cognizance: a decree for money though it may pass in some cases, is perhaps, the least likely to be rendered. The matters in controversy, much more frequently tend to some other result, and end in relation to those matters about which there could be no estimate of 124 per cent. The case before us illustrates this position, while it restrains for a time the collection of money. The title to land is in question, and the same decree that dissolves the injunction, orders the transfer of title, by delivery of the deed filed in the cause. The act of 1817, ch. 199, sec., 3, comes fully in aid of this, construction.
Motion overruled.